[Cite as *State v. Harris*, 2026-Ohio-613.]

| STATE OF OHIO | ) | | IN THE COURT OF APPEALS |
|---|---|---|---|
| | )ss: | | NINTH JUDICIAL DISTRICT |
| COUNTY OF LORAIN | ) | | |

| STATE OF OHIO | | C.A. No. 24CA012087 |
|---|---|---|
| Appellee | | |
| v. | | APPEAL FROM JUDGMENT ENTERED IN THE |
| BRITTNEY N. HARRIS | | COURT OF COMMON PLEAS COUNTY OF LORAIN, OHIO |
| Appellant | | CASE No. 21CR105185 |

DECISION AND JOURNAL ENTRY

Dated: February 23, 2026

---

FLAGG LANZINGER, Presiding Judge.

{¶1} Brittney Harris appeals from the judgments of the Lorain County Court of Common Pleas. For the following reasons, this Court affirms in part, reverses in part, and remands the matter for further proceedings consistent with this decision.

I.

{¶2} In 2021, a grand jury indicted Harris on two felony counts of operating a vehicle under the influence of alcohol ("OVI"). The counts were fourth-degree felonies under R.C. 4511.19(G)(1)(D) because Harris had five prior OVI convictions within twenty years of the 2021 indictment. Both counts contained repeat-offender specifications. Harris pleaded not guilty.

**Motions to Suppress**

{¶3} Relevant to this appeal, Harris filed two motions to suppress. The first motion to suppress related to one of her prior OVI convictions. Harris argued that the trial court should suppress her 2007 OVI conviction and not use it to enhance the current OVI charges from

misdemeanor offenses to felony offenses because that conviction resulted from an uncounseled no contest plea without a valid waiver of her right to counsel. The State opposed Harris's motion.

{¶4} The trial court held a hearing on Harris's first motion to suppress. After the hearing, the trial court issued a journal entry denying Harris's motion. The trial court based its denial upon its review of the audio recording of Harris's 2007 plea. As discussed below, Harris asserts on appeal that the trial court erroneously obtained the 2007 audio recording on its own initiative after the suppression hearing, and did not provide it to the parties.

{¶5} Harris later filed a second motion to suppress. Harris asserted in her second motion to suppress that officers unlawfully stopped her vehicle, and that officers arrested her without probable cause. Harris also asserted that the trial court should suppress statements the officers made about her refusal to take a breathalyzer test, and statements she made during the stop and arrest. The State responded in opposition, arguing that the trial court should summarily deny Harris's motion without holding a hearing because Harris's motion failed to meet the particularity requirement under Crim.R. 47. Alternatively, the State argued that the trial court should deny Harris's motion because it lacked merit.

{¶6} The trial court did not hold a hearing on Harris's second motion to suppress. Instead, the trial court issued a judgment entry that denied Harris's motion on the basis that the motion did "not state with particularity the legal and factual issues to be resolved or contain any statements of facts that would provide notice or an explanation of why a motion to suppress should be granted . . . ." Harris moved the trial court to reconsider its judgment, which the trial court denied.

**The Bench Trial**

{¶7} The matter proceeded to a bench trial. At trial, the State presented testimony from one of the officers who stopped Harris's vehicle and arrested her. Harris and the passenger of Harris's vehicle on the night of Harris's arrest testified on behalf of the defense. This Court will summarize each witness's testimony in turn.

{¶8} A detective with the Elyria Police Department testified that he and another officer were assigned to overtime detail on the evening of September 10, 2021, through the morning of September 11, 2021. The detective explained that overtime detail is "a proactive detail, to combat any crimes, impaired driving, that go along with the various bars in the city of Elyria."

{¶9} The detective testified that he observed a vehicle make a marked-lanes violation after the vehicle exited the parking lot of a bar called Settle Inn around 1:30 a.m. on September 11, 2021. The detective testified that he and the officer could not immediately pull behind the vehicle, so they "parallel[ed]" the vehicle by driving down a street parallel to the street the vehicle was traversing. The detective testified that he observed the vehicle again when he and the officer reached an intersection, at which point they pulled behind the vehicle. The detective testified that he observed the vehicle make additional marked-lanes violations, and turn without using a signal. The officer, who was driving the patrol car, activated the patrol car's overhead lights and sirens, and initiated a traffic stop. The detective testified that the vehicle initially pulled onto the grass on the side of the road and stopped. The vehicle then drove farther down the street, turned onto another street, and then stopped.

{¶10} The detective testified that he approached the passenger side of the vehicle while the officer approached the driver's side. Harris was the driver of the vehicle. The detective testified that the other officer ordered Harris and the passenger to step out of the vehicle, and that

they complied. The detective testified that he directed Harris to the sidewalk, but that Harris was unable to follow his commands and kept trying to walk off the sidewalk. The detective testified that Harris had slurred speech, and that he observed an odor of alcohol on Harris's breath and emanating from the vehicle. The detective also testified that there was an open can of beer in the vehicle, as well as an open bottle of Tequila. The detective testified that Harris refused a breathalyzer test and field sobriety tests, and that the officer read Harris the BMV 2255 form. The detective and officer then arrested Harris for an OVI, and transported her to the jail.

{¶11} The passenger of Harris's vehicle testified that she hosted a bonfire at her house that evening, which Harris attended. The passenger testified that she did not observe Harris consume alcohol that evening, and that she and Harris left the bonfire around 11 p.m. to go to Dairy Mart. The passenger testified that the plan was for Harris to drive her to Dairy Mart and then drop her off at Settle Inn, which was about half a mile from her house. The passenger testified that the police pulled Harris over after they left Dairy Mart, and that Harris's vehicle was never in the parking lot of Settle Inn.

{¶12} Harris then testified on her own behalf. Harris testified that she drove the passenger to Dairy Mart around 11:30 p.m., and that they purchased Black and Mild cigars and a beer. Harris testified that the beer remained unopened in her vehicle. Harris admitted that she had an open bottle of Tequila in her vehicle, but claimed she had not consumed any alcohol and was taking the Tequila to the bonfire.

{¶13} Harris testified that her timeline and route of travel contradicted the detective's testimony. Harris presented screenshots she took from Google Maps to attempt to show that she was never in the Settle Inn parking lot, and that her route of travel differed from the detective's testimony. Harris also presented a bank transaction receipt from Dairy Mart to support her claim

that the traffic stop occurred around 11:45 p.m., not 1:30 a.m. like the detective testified. Harris also testified that she "begged" the officers for a breathalyzer test and field sobriety tests because she wanted to prove she had not consumed alcohol, but they refused to administer any tests. Harris also testified that one of the officers told her at the jail not to incriminate herself after she continued to ask for chemical tests.

**Harris's Conviction and Sentence**

{¶14} The trial court took the matter under advisement and later found Harris guilty of one count of OVI under R.C. 4511.19(A)(1)(a), and one count of OVI under R.C. 4511.19(A)(2)(a), as well as the repeat-offender specifications. The trial court merged the counts for purposes of sentencing. The State elected to proceed with sentencing on the OVI count under R.C. 4511.19(A)(2)(a). The trial court sentenced Harris to a total of 1 year and 120 days in prison. Harris now appeals, raising five assignments of error for this Court's review. Because Harris has combined her first and second assignments of error on the basis that they are related, this Court will consider them together.

**ASSIGNMENT OF ERROR I**

**THE TRIAL COURT ERRED BY DENYING APPELLANT'S FIRST MOTION TO SUPPRESS.**

**ASSIGNMENT OF ERROR II**

**THE TRIAL COURT ERRED BY NOT DISCLOSING THE AUDIO RECORDING OF APPELLANT'S UNCOUNSELED PLEA TO THE PARTIES FOR FURTHER OPPORTUNITY TO REVIEW, EXAMINE, AND LITIGATE THE RECORDING.**

{¶15} In her first assignment of error, Harris argues that the trial court erred by denying her first motion to suppress. In her second assignment of error, Harris argues that the trial court erred by obtaining an audio recording of her 2007 OVI no contest plea on its own initiative after

the hearing on her first motion to suppress. Harris argues that the trial court erred by relying on that audio recording to deny her first motion to suppress without allowing the parties an opportunity to be heard on that audio recording. For the following reasons, this Court sustains Harris's first and second assignments of error.

{¶16} As noted, the record reflects that the trial court held a hearing on Harris's first motion to suppress. In her first motion, Harris argued that the trial court should suppress her 2007 OVI conviction from the Elyria Municipal Court and not use it to enhance the current OVI charges from misdemeanors to felonies because that conviction resulted from an uncounseled plea without a valid waiver of her right to counsel.

{¶17} At no point during the suppression hearing did either party introduce the audio recording (or transcript) of Harris's 2007 OVI plea in the Elyria Municipal Court. Notwithstanding, the record reflects that the trial court obtained a copy of the audio recording on its own initiative, and then relied on that recording to deny Harris's first motion to suppress. Specifically, the trial court's judgment entry denying Harris's first motion to suppress stated:

> This Court has reviewed . . . the audio of the defendant's conviction in Elyria Municipal Court with Judge Musson. Based upon the review of her rights with the judge, I find that she knowingly, voluntarily and intelligently waived her right to counsel before entering her guilty plea. Therefore, the Defendant's Motion to Suppress her prior conviction is denied.

{¶18} It is apparent the trial court considered evidence that neither party introduced at the suppression hearing to determine that Harris validly waived her right to counsel. As this Court has stated, "[t]here is no authority for a trial court's independent investigation." *State v. Rankin*, 2024-Ohio-4565, ¶ 14 (9th Dist.), quoting *State v. Bayliff*, 2010-Ohio-3944, ¶ 27 (3d Dist.). Consequently, it was "impermissible for the trial court to consider evidence outside the record and conduct its own investigation of the facts." *Rankin* at ¶ 14, quoting *Bayliff* at ¶ 27. Doing so

results in reversible error. *Rankin* at ¶ 14-15. The State concedes this error on appeal, but argues that this Court should still affirm the judgment of the trial court based upon the evidence (or lack thereof) presented at the suppression hearing.

{¶19} This Court holds that the trial court erred by obtaining an audio recording from a prior case in another court on its own initiative, and then relying on it to deny Harris's first motion to suppress. *See Rankin* at ¶ 14-15. Were this Court to consider the merits of Harris's first motion to suppress without considering the improperly obtained audio recording of her 2007 OVI plea, we would be doing so in the first instance. "In doing so, this Court 'would be usurping the role of the trial court and exceeding its authority on appeal.'" *State v. Purk*, 2017-Ohio-7381, ¶ 15 (9th Dist.), quoting *Nationstar Mtg., L.L.C. v. Young*, 2015-Ohio-3868, ¶ 6 (9th Dist.). "Because this Court functions as a reviewing court, 'we are not inclined to resolve this matter in the first instance.'" *Purk* at ¶ 15, quoting *State v. Doll*, 2015-Ohio-1875, ¶ 14 (9th Dist.). Rather, it is appropriate to sustain Harris's first and second assignments of error and remand the matter so that the trial court can properly rule on Harris's motion in the first instance. *See Rankin* at ¶ 14-15. For these reasons, Harris's first and second assignments of error are sustained.

### ASSIGNMENT OF ERROR III

**THE TRIAL COURT ERRED BY DENYING APPELLANT'S SECOND MOTION TO SUPPRESS WITHOUT A HEARING.**

{¶20} In her third assignment of error, Harris argues that the trial court erred by denying her second motion to suppress without holding a hearing. For the following reasons, this Court overrules Harris's third assignment of error.

{¶21} "A trial court is required to hold a suppression hearing if the defendant's motion satisfies the standards set forth in Crim.R. 47." *State v. Mishler*, 2024-Ohio-1085, ¶ 13 (9th Dist.), citing *State v. Shindler*, 70 Ohio St.3d 54, 57 (1994). Crim.R. 47 provides, in part:

> An application to the court for an order shall be by motion. A motion, other than one made during trial or hearing, shall be in writing unless the court permits it to be made orally. It shall state with particularity the grounds upon which it is made and shall set forth the relief or order sought. It shall be supported by a memorandum containing citations of authority, and may also be supported by an affidavit.

"The question of whether [Harris's] motion to suppress satisfied Crim.R. 47 is a question of law[,]" which this Court reviews de novo. *Mishler* at ¶ 11.

{¶22} The Ohio Supreme Court has explained that "[i]n order to require a hearing on a motion to suppress evidence, the accused must state the motion's legal and factual bases with sufficient particularity to place the prosecutor and the court on notice of the issues to be decided." *Shindler* at syllabus. "When interpreting its holding in *Shindler*, the Ohio Supreme Court recognized that the law 'does not require that a defendant set forth the basis for suppression in excruciating detail. Instead, the question is whether the language used provides sufficient notice to the state.'" *Mishler* at ¶ 13, quoting *State v. Codeluppi*, 2014-Ohio-1574, ¶ 13.

{¶23} On appeal, Harris has not explained how her second motion to suppress met the particularity requirement under Crim.R. 47. Harris neither cites nor references Crim.R. 47 in her merit brief. Instead, Harris cites the Ohio Supreme Court's decision in *Codeluppi*, and summarily asserts that her second motion to suppress sufficiently put the State on notice of the facts and issues to warrant a hearing.

{¶24} While Harris briefly summarizes the evidence she sought to suppress, as well as the legal grounds she cited in her motion, Harris's argument on appeal consists of legal conclusions. These legal conclusions fail to explain how her second motion to suppress satisfied the

particularity requirement under Crim.R. 47 such that the trial court erred by not holding a hearing. "An appellant has the burden of demonstrating error on appeal." *State v. Mastice*, 2007-Ohio-4107, ¶ 7 (9th Dist.). Based upon the limited argument presented, Harris has failed to meet this burden. Harris's third assignment of error is overruled.

## ASSIGNMENT OF ERROR IV

**THE TRIAL COURT ERRED BY DENYING APPELLANT'S CRIM.R. 29 MOTION BECAUSE THE EVIDENCE WAS INSUFFICIENT.**

{¶25} In her fourth assignment of error, Harris argues that the trial court erred by denying her Crim.R. 29 motion because the State failed to present sufficient evidence in support of her OVI convictions. While our resolution of Harris's first and second assignments of error mandates reversal, we are compelled to address her sufficiency challenge due to the constitutional protection against double jeopardy. *Mishler*, 2024-Ohio-1085, at ¶ 17 (9th Dist.). For the following reasons, this Court overrules Harris's fourth assignment of error.

{¶26} "A motion for acquittal under Crim.R. 29(A) is governed by the same standard as the one for determining whether a verdict is supported by sufficient evidence." *State v. Graham*, 2025-Ohio-3134, ¶ 12 (9th Dist.), quoting *State v. Tenace*, 2006-Ohio-2417, ¶ 37. "Whether a conviction is supported by sufficient evidence is a question of law that this Court reviews de novo." *State v. Williams*, 2009-Ohio-6955, ¶ 18 (9th Dist.), citing *State v. Thompkins*, 78 Ohio St.3d 380, 386 (1997). The relevant inquiry is whether the prosecution has met its burden of production by presenting sufficient evidence to sustain a conviction. *Thompkins* at 390 (Cook, J., concurring). For purposes of a sufficiency analysis, this Court must view the evidence in the light most favorable to the State. *Jackson v. Virginia*, 443 U.S. 307, 319 (1979). We do not evaluate credibility, and we make all reasonable inferences in favor of the State. *State v. Jenks*, 61 Ohio St.3d 259, 273 (1991). The evidence is sufficient if it allows the trier of fact to reasonably conclude

that the State proved the essential elements of the crime beyond a reasonable doubt. *Id.* The trier of fact is entitled to rely on direct, as well as circumstantial evidence. *See id.*

{¶27}  The trial court found Harris guilty of OVIs under R.C. 4511.19(A)(1)(a) and R.C. 4511.19(A)(2)(a).  Respectively, those statutes provide:

> No person shall operate any vehicle . . . if, at the time of the operation, . . . [t]he person is under the influence of alcohol . . . .

> No person who, within twenty years of the conduct described in division (A)(2)(a) of this section, previously has been convicted of or pleaded guilty to a violation of this division, a violation of division (A)(1) of this section, or any other equivalent offense shall do both of the following:

> (a) Operate any vehicle . . . while under the influence of alcohol . . .;

> (b) Subsequent to being arrested for operating the vehicle, . . . as described in division (A)(2)(a) of this section, being asked by a law enforcement officer to submit to a chemical test or tests under [R.C.4511.191], and being advised by the officer in accordance with [R.C. 4511.192] of the consequences of the person's refusal or submission to the test or tests, refuse to submit to the test or tests.

R.C. 4511.19(A)(1)(a) and R.C. 4511.19(A)(2)(a).

{¶28}  On appeal, Harris solely challenges the State's evidence regarding her impairment. To that end, Harris asserts that: (1) the open can of beer in her vehicle accounted for the odor of alcohol the officers smelled; (2) the odor of alcohol on her breath may have indicated that she consumed alcohol, but it did not mean she was impaired; (3) the State presented no evidence as to the strength of the odor of alcohol on her breath; (4) her failure to follow the officers' commands could show that she was simply defiant or not listening, not that she was impaired; (5) her refusal to perform field sobriety tests is not evidence of impairment; (6) marked-lanes violations, by themselves, are not indicative of impairment; and (7) the State did not present any dash or body camera footage to verify the detective's version of the events.

{¶29} Initially, this Court rejects Harris's assertion regarding the lack of video evidence because the record indicates that the Elyria Police Department did not have "dash-cam or video" at the time of the offenses. Even if they did, the State was not required to corroborate the detective's testimony. As this Court has acknowledged, "the testimony of a single witness, if believed, is sufficient to support a criminal conviction." *State v. Dudley*, 2017-Ohio-7044, ¶ 10 (9th Dist.).

{¶30} Harris's argument otherwise lacks merit. The State presented evidence indicating that officers observed Harris commit multiple mark-lanes violations after leaving the parking lot of a bar around 1:30 a.m. The State also presented evidence indicating that officers observed an odor of alcohol on Harris's breath, and that there was an open can of beer in her vehicle, as well as a bottle of Tequila. The State further presented evidence indicating that Harris did not follow the officers' commands, refused a breathalyzer after the officer read Harris the BMV 2255 form, refused field sobriety tests, and had slurred speech. Viewing this evidence in a light most favorable to the State, this Court concludes that the State presented sufficient evidence for the trial court (as the trier of fact in this case) to reasonably conclude that Harris was impaired beyond a reasonable doubt. *Jenks*, 61 Ohio St.3d at 273; *see State v. Crutchfield*, 2011-Ohio-6681, ¶ 12 (9th Dist.) (holding that the "combination of indicators" was sufficient to support a finding that the defendant was intoxicated, and that his driving was impaired). Accordingly, Harris's fourth assignment of error is overruled.

**ASSIGNMENT OF ERROR V**

**THE TRIAL COURT ERRED BY FINDING APPELLANT GUILTY OF OVI AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.**

**{¶31}** In her fifth assignment of error, Harris challenges the manifest weight of the evidence. In light of this Court's resolution of Harris's first and second assignments of error, Harris's fifth assignment of error is moot, and is overruled on that basis. *See* App.R. 12(A)(1)(c).

## III.

**{¶32}** Harris's first and second assignments of error are sustained. Harris's third, fourth, and fifth assignments of error are overruled. The judgment of the Lorain County Court of Common Pleas is affirmed in part, reversed in part, and the matter is remanded for further proceedings consistent with this decision.

Judgment affirmed in part,
reversed in part,
and cause remanded.

————

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Lorain, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed equally to both parties.

JILL FLAGG LANZINGER
FOR THE COURT

HENSAL, J.
SUTTON, J.
CONCUR.

APPEARANCES:

STEPHEN P. HANUDEL, Attorney at Law, for Appellant.

ANTHONY CILLO, Prosecuting Attorney, and SPENCER J. LUCKWITZ, Assistant Prosecuting Attorney, for Appellee.